Case 1:21-cr-00214-LMB Document 8 Filed 10/05/21 Page 1 of 7 PageID# 31



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHATO LEE SUNDAY,<br><br>*Defendant.* | Case No. 1:21-CR-214 |

## STATEMENT OF FACTS

The United States and the defendant, Chato Lee Sunday, agree that the allegations in the criminal information and the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. Beginning in or around June 2019 and continuing through February 2021, within the Eastern District of Virginia, the defendant, CHATO LEE SUNDAY, did knowingly, intentionally, and unlawfully conspire with others, known and unknown, to distribute 40 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, commonly referred to as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. On or about February 9, 2021, within the Eastern District of Virginia, the defendant, CHATO LEE SUNDAY, did knowingly, intentionally, and unlawfully possess a firearm in furtherance of a drug trafficking crime occurring in the Eastern District of Virginia, that is, conspiracy to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of Title 18, United States Code, Section 924(c).

3. The defendant acquired illicit drugs for distribution from suppliers in the Eastern District of Virginia, Washington, D.C., Maryland, California, Nevada, and Washington State. Illicit drugs distributed by the defendant include marijuana, LSD (or "acid"), mushrooms (or psilocybin), Xanax, oxycodone, and fentanyl. The defendant obtained the illicit drugs either through in-person exchanges of money for drugs, or by way of interstate shipping carriers wherein suppliers sent packages to his residence in Woodbridge, Virginia. The defendant and his co-conspirators utilized wire transfer services located in the Eastern District of Virginia to pay out-of-state suppliers for drugs that he then resold in this District.

4. The defendant sold quantities of fentanyl and other illicit drugs he obtained to drug users as well as redistributors primarily in Prince William County. Throughout the course of the conspiracy, the defendant resided in Woodbridge, Virginia, where he used his home to store and sell the fentanyl. The defendant typically distributed drugs, including fentanyl, to customers by way of hand-to-hand transactions at the front door, in the driveway, and at the back fence of the home, and by leaving the drugs in the mailbox for customers to retrieve. The defendant regularly had a minor assist with drug transactions by putting drugs in the mailbox for him. The defendant also would meet customers at locations throughout northern Virginia to exchange drugs for money. The defendant directed co-conspirators to help him distribute drugs by handing the drugs to customers at the defendant's residence and by driving the defendant to various location to deliver drugs to customers.

5. The defendant accepted cash as payment for the fentanyl as well as transfers of money through a peer-to-peer (P2P) payment application operated by a co-conspirator at the defendant's direction. The defendant primarily used Snapchat, a messaging application, to communicate with customers about drug transactions. The defendant and his customers

commonly referred to the oxycodone tablets he sold as "percs" within their communications. The defendant charged a premium for tablets known to contain fentanyl, which he advertised as "dirty."

6. On or about June 12, 2020, the defendant placed white fentanyl-laced tablets in the mailbox at his home in Woodbridge for a co-conspirator to pick up. Shortly thereafter, the individual sent a text to the defendant asking if they needed to be careful with the white tablets because the white ones are stronger and have fentanyl in them. The defendant confirmed that the tablets were fentanyl and offered to give the co-conspirator "weak ones" instead. When the individual declined the offer, the defendant said that he had been giving the person "weak ones" and was trying to see if they "could handle the real joints."

7. One of the defendant's customers in 2020 was D.J. From May to October 3, 2020, within the Eastern District of Virginia, the defendant sold D.J. approximately 833 counterfeit oxycodone tablets, or "percs," which contained fentanyl, in exchange for a total of approximately $16,825. The defendant knew that D.J. was redistributing a large percentage of the tablets D.J. bought from the defendant. On or about June 13, 2020, D.J. told the defendant that the tablets the defendant sold him the day before were fentanyl, as evidenced by the non-fatal overdose of two individuals to whom D.J. had redistributed the tablets. D.J. warned the defendant to be careful selling the tablets because if someone dies from them the defendant could be charged with murder.

8. On or about June 25, 2020, one of the defendant's co-conspirators told the defendant about a new source of "percs," saying the source "can get 100 fetty ones," meaning fentanyl. The defendant said he would pay cash for 100 if it was fentanyl "for sure." His

co-conspirator confirmed that it was. The defendant agreed to purchase 50 fentanyl tablets for $750.

9. From at least March 2020 through July 10, 2020, Cora Bardwell was one of the defendant's customers. The defendant and Bardwell communicated on Snapchat about illicit drug transactions as the defendant regularly sold Bardwell marijuana and counterfeit Xanax. On July 5, 2020, Bardwell asked the defendant for an eighth of an ounce of marijuana and "percs." Bardwell and the defendant agreed on a price of $175 for five "percs," which Bardwell believed were 30 milligram oxycodone tablets. Bardwell asked the defendant how to consume the substance and what it would make her feel like. Bardwell said that she was "ignorant" about "percs." The defendant told Bardwell that the tablets are strong enough to make her pass out. The defendant arranged to have the five "percs" put in the mailbox at his home in Woodbridge so that Bardwell could pick them up on her return from out of town. Later that evening, after Bardwell picked up the "percs," the defendant sent Bardwell a Snapchat message telling her to let him know what she thought of the "percs." He added, "And there [sic] clean." Bardwell responded that she had taken a tablet. The defendant told Bardwell that the tablets are good but strong enough that he was scared because of her small physical size.

10. Sometime after 8:30pm on the night of July 9, 2020, Bardwell consumed one of the tablets sold to her by the defendant on July 5, 2020, and counterfeit Xanax sold to her by another individual, causing her to suffer a fatal overdose. Her body was found in the early morning hours of July 10, 2020, along with the three remaining tablets sold to her by the defendant. The tablets distributed to Bardwell by the defendant were found to contain fentanyl. Bardwell died of mixed drug intoxication of fentanyl and flualprazolam; she was found to have fentanyl in her blood.

4

11. Throughout the course of the conspiracy, the defendant made it known to customers that he either maintained a firearm and/or sold firearms. The defendant regularly referred to firearms as "straps." On or about April 10, 2020, the defendant told Bardwell in a Snapchat message that he was about to get his "strap" after seeing Bardwell's boyfriend in the defendant's driveway during a drug transaction with Bardwell.

12. On or about January 27, 2021, the defendant exchanged text messages with an undercover officer who the defendant thought was a potential customer. The defendant told the undercover officer that he sold drugs and guns. The defendant and the undercover officer discussed logistics of a future drug transaction. When the parties could not agree on a meeting location, the defendant told the undercover officer that he had been planning to rob the officer during the drug transaction.

13. On or about February 9, 2021, during the execution of a search warrant at the defendant's residence, law enforcement recovered from the defendant's bedroom a Smith & Wesson M&P Shield .45 caliber pistol, as well as various illicit substances and cash proceeds totaling more than $10,300.

14. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

15. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

16. If the defendant breaches the plea agreement, then pursuant to the plea agreement, he waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence

410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement in any such proceeding.

                                          Respectfully submitted,

                                          Raj Parekh
                                          Acting United States Attorney

Date: April 6, 2021                By: _____
                                          Rachael C. Tucker
                                          Assistant United States Attorney

<u>Defendant's Signature</u>: After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, CHATO LEE SUNDAY, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that if the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date 4/6/21

_____
Chato Lee Sunday
Defendant

<u>Defense Counsel's Signature</u>: I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

Date 4/6/21

_____
James W. Hundley, Esq.
Attorney for the Defendant

7